IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL D. SHAW,                    )
                                    )
                Plaintiff,          )
                                    )
        v.                          ) Civil Action No. 11-139J
                                    )
MICHAEL J. ASTRUE,                  )
COMMISSIONER OF                     )
SOCIAL SECURITY,                    )
                                    )
                Defendant.          )

MEMORANDUM JUDGMENT ORDER

AND NOW, this _24th_ day of September, 2012, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for disability insurance benefits and supplemental security income under Titles II and XVI, respectively, of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 15) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 12) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Importantly, where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by

those findings, even if it would have decided the factual inquiry differently.  Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001).  These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff protectively filed his pending applications[1] for benefits on February 3, 2009, alleging a disability onset date of December 3, 2008, due to a learning disability and low back pain. Plaintiff's applications were denied initially.  At plaintiff's request an ALJ held a video hearing on May 27, 2010, at which plaintiff, represented by counsel, appeared and testified.  On July 20, 2010, the ALJ issued a decision finding that plaintiff is not disabled.  On April 22, 2011, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 46 years old at the time of the ALJ's decision and is classified as a younger person under the regulations.  20 C.F.R. §§404.1563(c) and 416.963(c).  Although plaintiff graduated from high school, in light of his learning disability, the ALJ found that he has a "marginal" education, which is defined as the "ability in reasoning, arithmetic and language skills needed to do simple, unskilled types of jobs."  20 C.F.R. §§404.1564(b)(2) and

---

[1]  For purposes of plaintiff's Title II application, the ALJ found that plaintiff met the disability insured status requirements of the Act on his alleged onset date and has acquired sufficient quarters of coverage to remain insured only through December 31, 2013.

AO 72
(Rev. 8/82)

416.964(b)(2).  Plaintiff has past relevant work experience as a groundskeeper, janitor and car detailer, but he has not engaged in any substantial gainful activity since his alleged onset date.

After reviewing plaintiff's medical records and hearing testimony from plaintiff, plaintiff's friend and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act.  The ALJ found that although the medical evidence establishes that plaintiff suffers from the severe impairments of borderline intellectual functioning and cervical spine degenerative disc disease, those impairments, alone or in combination, do not meet or medically equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

The ALJ also found that plaintiff retains the residual functional capacity to perform light work with occasional postural activities, he can perform only simple and unskilled work, he cannot work at a production rate and he requires work consistent with a marginal education.  (R. 17).  A vocational expert identified numerous categories of jobs which plaintiff can perform based upon his age, education, work experience and residual functional capacity, including laundry worker, maid and silver wrapper.  Relying on the vocational expert's testimony, the ALJ found that while plaintiff cannot perform his past relevant work, he is capable of making an adjustment to work which exists in significant numbers in the national economy.  Accordingly, the ALJ determined that plaintiff is not disabled.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months.  42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A).  The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §§423(d)(1)(B) and 1382c(a)(3)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process[2] for determining whether a claimant is under a disability.  20 C.F.R. §§404.1520 and 416.920; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003).  If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).

Here, plaintiff raises several challenges to the ALJ's findings: (1) the ALJ erred at step 2 in finding that plaintiff's

---

[2] The ALJ must determine in sequence:  (1) whether the claimant currently is engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether his impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past-relevant work; and, (5) if so, whether the claimant can perform any other work which exists in the national economy in light of his age, education, work experience and residual functional capacity.  20 C.F.R. §§404.1520 and 416.920.  In addition, when there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in the regulations.  Plummer, 186 F.2d at 432; 20 C.F.R. §§404.1520a and 416.920a.

✎AO 72
(Rev. 8/82)

carpal tunnel syndrome and low back pain are not severe impairments; (2) the ALJ erred at step 3 by finding that plaintiff's borderline intellectual functioning does not meet or equal Listing 12.05; and, (3) the ALJ improperly assessed plaintiff's residual functional capacity by failing to consider all of plaintiff's impairments in combination. Upon review, the court is satisfied that the ALJ properly evaluated the evidence and that all of the ALJ's findings are supported by substantial evidence.

The court first will address plaintiff's challenge to the ALJ's step 2 finding that his carpal tunnel syndrome and low back pain are not severe impairments. At step two, the ALJ must determine whether a claimant's impairments are severe as defined by the Act. 20 C.F.R. §§404.1520 and 416.920. "[An] impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§404.1520(a) and 416.920(a). The step two inquiry is a de minimus screening device and, if the evidence presents more than a slight abnormality, the step two requirement of severity is met and the sequential evaluation process should continue. Newell, 347 F.3d at 546.

Although "[r]easonable doubts on severity are to be resolved in favor of the claimant," Newell, 347 F.3d at 547, the ALJ concluded in this case that plaintiff's carpal tunnel syndrome and low back pain do not have more than a de minimus effect on plaintiff's ability to perform basic work activities and,

therefore, are not severe impairments. (R. 13-14).

As to plaintiff's carpal tunnel syndrome, the objective medical evidence shows that plaintiff has only minimal right medial neuropathy at the level of carpal tunnel, borderline left medial neuropathy at the level of carpal tunnel, and minimal bilateral ulnar neuropathy at the elbow. In addition, the ALJ noted that although plaintiff has been prescribed a nighttime wrist splint, he has not received any other treatment for carpal tunnel syndrome. (R. 13). As to plaintiff's low back pain, the ALJ noted that following physical therapy and the use of a TENS unit, plaintiff himself indicated he was pain-free in the lower back. (R. 14). Based on the lack of objective findings, the ALJ reasonably concluded that plaintiff's carpal tunnel syndrome and low back pain have no more than a minimal impact on his ability to perform basic work activities, and the evidence outlined in the ALJ's decision supports his conclusion.

Furthermore, the claimant bears the burden at step 2 of establishing that an impairment is severe. See, McCrea v. Commissioner of Social Security, 370 F.3d 357, 360 (3rd Cir. 2004). Although not exacting, plaintiff's burden here was to show that his carpal tunnel syndrome and/or low back pain resulted in more than a de minimus effect on his ability to perform basic work functions. Instead, all plaintiff relies upon are diagnoses. However, it is well settled that disability is not determined merely by the presence of an impairment, but by the effect that impairment has upon the individual's ability to perform

AO 72
(Rev. 8/82)

substantial gainful activity.  Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991).  Here, plaintiff failed to meet his burden of showing that either carpal tunnel syndrome or low back pain resulted in any specific work-related limitations.

It also is important to note that the ALJ did not deny plaintiff's claim at step 2.   Instead, he considered the impact of all of plaintiff's medically determinable impairments, severe and not severe, on plaintiff's residual functional capacity and found plaintiff not disabled at step 5.  Accordingly, the ALJ's finding that plaintiff's carpal tunnel syndrome and low back pain are not severe not only is supported by substantial evidence but also had no effect on the ultimate determination of non-disability.  Cf., McCrea v. Commissioner of Social Security, 370 F.3d 357, 360-61 (3rd Cir. 2004) (the Commissioner's determination to deny a claim at step 2 "should be reviewed with close scrutiny" because step 2 "is to be rarely utilized as a basis for the denial of benefits".)

Plaintiff next argues that the ALJ erred at step 3 by finding that plaintiff does not have an impairment, or combination of impairments, that meets or medically equals any of the listed impairments.  Upon review, the court is satisfied that the ALJ's step 3 finding is supported by substantial evidence.

At step 3, the ALJ must determine whether the claimant's impairment matches, or is equivalent to, one of the listed impairments.  Burnett v. Commissioner of Social Security Administration, 220 F.3d 112, 119 (3d Cir. 2000).  The listings

AO 72
(Rev. 8/82)

describe impairments that prevent an adult, regardless of age, education, or work experience, from performing any gainful activity. Knepp v. Apfel, 204 F.3d 78, 85 (3d Cir. 2000); 20 C.F.R. §§404.1520(d) and 416.920(d). "If the impairment is equivalent to a listed impairment then [the claimant] is per se disabled and no further analysis is necessary." Burnett, 220 F.3d at 119.

The burden is on the ALJ to identify the relevant listed impairment in the federal regulations that compares with the claimant's impairment. Id. at 120 n.2. The ALJ must "fully develop the record and explain his findings at step 3, including an analysis of whether and why [the claimant's] ... impairments ... are or are not equivalent in severity to one of the listed impairments." Id.

Here, the ALJ identified Listing 1.04 as the appropriate listing for plaintiff's cervical spine degenerative disc disease and Listings 12.02 and 12.05 as the appropriate listings comparing to plaintiff's borderline intellectual functioning. He then explained, in great detail, why plaintiff's impairments do not meet or equal any of those listings, and his conclusion is supported by substantial evidence as outlined in his decision. (R. 14-17).

The crux of plaintiff's step 3 argument to this court is that the ALJ's finding that he does not meet Listing 12.05(C) is not

supported by substantial evidence.[3]   The criteria for meeting Listing 12.05(C) are as follows:

> 12.05. Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> * * *
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function ...

20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.05.

Pursuant to the Regulations and case law in this circuit, in order to meet Listing 12.05, a claimant must meet both the introductory criteria to that listing, requiring "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested [before age 22]," and the criteria of one of paragraphs A through D.  20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00A; Gist v. Barnhart, 67 Fed. Appx. 78, 81 (3d Cir. 2003)("[a]s is true in regard to any 12.05 listing, before demonstrating the specific requirements of Listing 12.05C,

---

[3] Although the heading to plaintiff's step 3 argument states that the ALJ also erred in finding that plaintiff does not meet or equal Listing 1.04, for disorders of the spine, or Listing 12.02, for organic mental disorders, his actual argument focuses solely on Listing 12.05(C).   In any event, the ALJ explicitly analyzed plaintiff's impairments under both Listing 1.04 and 12.02 and adequately explained why plaintiff's impairments do not meet or equal those listings. (R. 14-17).   The medical evidence of record supports the ALJ's finding.

AO 72
(Rev. 8/82)

a claimant must show proof of a 'deficit in adaptive functioning' with an initial onset prior to age 22."); Cortes v. Commissioner of Social Security, 255 Fed. Appx. 646, 651 (3d Cir. 2007) (to meet the listing for mental retardation, the claimant must prove, inter alia, "subaverage general intellectual functioning with deficits in adaptive functioning" manifesting before age 22); Grunden v. Astrue, 2011 WL 4565502 (W.D. Pa., Sept. 29, 2011).

Here, the ALJ found that plaintiff does not meet Listing 12.05 because he failed to show either significantly subaverage general intellectual functioning with deficits in adaptive functioning prior to age 22, as required under the introductory paragraph, or a valid verbal, performance or full scale IQ of 60 through 70 as required under paragraph (C).[4] In making this determination, the ALJ discussed the relevant medical and other evidence supporting his conclusion and adequately explained how he arrived at his finding. (R. 15-17).

Plaintiff, however, argues that the ALJ improperly rejected the results of IQ testing administered by Dr. D'Agaro, the consultative psychologist, in August of 2009. In that testing, although plaintiff attained a performance IQ score of 75, his

---

[4] The ALJ also considered whether plaintiff meets Listing 12.05 under paragraph (D), which requires a valid verbal, performance or full scale IQ of 60 through 70 and two of the following: marked restrictions in activities of daily living; marked difficulties in social functioning; marked difficulties in maintaining concentration, persistence or pace; or, repeated episodes of decompensation, each of extended duration. The ALJ adequately explained his finding that plaintiff satisfies neither the first or second prong of paragraph (D) and his finding in this regard also is supported by substantial evidence. (R. 14-17).

verbal and full scale IQ scores were 69, at the upper limit of the 60 through 70 range required by Listing 12.05(C).[5]   Accordingly, plaintiff contends that the requirements of that Listing have been met.[6]   The court disagrees.

Although the testing administered by the consultative examiner resulted in verbal and full scale IQ scores of 69, the regulations require <u>valid</u> scores, and it is well-settled that an ALJ is not required to accept a claimant's IQ scores and may reject scores that are inconsistent with the record. <u>Markle</u>, 324 F.3d at 186.   Here, the ALJ expressly acknowledged the 2009 IQ scores and adequately explained why he did not accept them as valid.   (R. 17).   Specifically, the ALJ found that these scores, which were attained when plaintiff was 45 years old, were inconsistent with the other IQ scores found in the record from his childhood, which ranged from 81-90, well above the range required to meet Listing 12.05(C).

---

[5]   Under the Regulations, where verbal, performance and full scale IQ's are provided, the lowest of the scores is used for purposes of Listing 12.05, and only one score within the 60 through 70 range is necessary. <u>See</u> §12.00D.6.c; <u>Burns v. Barnhart</u>, 312 F.3d 113, 125, n. 6 (3d Cir. 2002).

[6]   Listing 12.05C also requires a physical or other mental impairment imposing an additional and significant work-related limitation of function.   Under the regulations, the second prong of 12.05C is satisfied by a finding that the "other" impairment is "severe" within the meaning of step 2 of the sequential evaluation process. <u>See</u> <u>Markle</u>, 324 F.3d at 186; 20 C.F.R. §§404.1520(c) and 416.920(c); 65 Fed. Reg. 50746, 50772 (August 21, 2000).   Here, there is no dispute that plaintiff's severe impairment of cervical spine degenerative disc disease qualifies as an "other" impairment within the meaning of Listing 12.05(C).

The court is satisfied that the ALJ's conclusion is supported by substantial evidence in the record. In determining whether an IQ score is valid, *i.e.*, an accurate reflection of a claimant's intellectual abilities, the ALJ is to consider the entire record before him. <u>Markle</u>, 324 F.3d at 186. "[T]est results may be deemed invalid where the IQ scores are inconsistent with the claimant's prior educational or work history, daily activities, behavior or other aspects of his or her life." <u>Manigault v. Astrue</u>, 2009 WL 1181253 (W.D. Pa. 2009)(J. Standish).

Here, it is clear that the ALJ considered the entire record and determined that the IQ scores of 69 were inconsistent with the other evidence. First, as emphasized by the ALJ, the 2009 results varied widely from the only other IQ results contained in the record, from plaintiff's childhood, when he attained a verbal IQ of 81, a performance IQ of 90, and a full scale IQ score of 84 at age 10 (R. 215, 217) and a verbal IQ of 80, a performance IQ of 91, and a full scale IQ score of 84 at age 13. (R. 215-16).

That the earlier scores are a more accurate reflection of plaintiff's intellectual abilities than the 2009 test is supported by the record as a whole. First, it is important to note that plaintiff never has been diagnosed even with mild mental retardation, not even by Dr. D'Agaro, who administered the 2009 test. Instead, Dr. D'Agaro diagnosed plaintiff with borderline intellectual functioning, (R 312), suggesting that despite the IQ scores of 69 he himself did not believe that plaintiff is mentally

retarded.[7] Manigault, 2009 WL 1181253 at *9 (psychologist who diagnosed claimant with borderline intellectual functioning rather then mild mental retardation, despite IQ scores in the 61-70 range, implicitly found scores to be invalid.)

Dr. D'Agaro's narrative report also supports a finding that plaintiff does not meet Listing 12.05(C). In that report, Dr. D'Agaro noted that plaintiff is able to tend to his own personal needs, drives, and "is otherwise responsible for his own well-being." (R. 310). While acknowledging plaintiff's "intellectual and academic limitations," he also recognized that plaintiff was able to complete 12 years of formal education and graduated from high school through special education services. (R. 309).

The ALJ's conclusion that plaintiff's IQ scores in 2009 are not an accurate reflection of his intellectual abilities also is supported by his observation that plaintiff "has an extensive work history that reflects consistent quarterly earnings from 1981 through 2008, notwithstanding his limitations." (R. 16). Plaintiff's adult work history also was noted by Dr. D'Agaro in his narrative report. (R. 310).

It is clear from the ALJ's decision that he considered the record as a whole in declining to accept the 2009 IQ scores and his determination that those scores are not an accurate reflection of plaintiff's actual intellectual abilities is supported by the

---

[7] Under the DSM-IV, standardized test scores between 71 and 84 are indicative of borderline intellectual functioning, while scores between 60 and 70 are indicative of mild mental retardation. Manigault, 2009 WL 1181253 at *9, n. 15.

evidence.   Accordingly, as Listing 12.05(C) requires a <u>valid</u> IQ score in the 60 through 70 range, the ALJ did not err in finding that plaintiff does not meet that listing.[8]   The court is satisfied that the ALJ's step 3 finding is supported by substantial evidence.

Plaintiff's final argument relates to the ALJ's finding of not disabled at step 5 of the sequential evaluation process.   At that step, the ALJ must show that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with her medical impairments, age, education, past work experience and residual functional capacity. 20 C.F.R. §§404.1520(f) and 416.920(f).   Residual functional capacity is defined as that which an individual still is able to do despite the limitations caused by her impairments.   20 C.F.R. §§404.1545(a) and 416.945(a); Fargnoli, 247 F.3d at 40.

Here, the ALJ found that plaintiff retains the residual functional capacity to perform light work with occasional postural activities and that he further is limited to only simple and

---

[8]   The ALJ also found that plaintiff does not meet the introductory criteria to Listing 12.05 because he did not establish "deficits in adaptive functioning" prior to age 22.   Although the ALJ did a thorough job setting forth the evidence supporting this finding, his assessment technically did not comply with the SSA's directive in Technical Revisions to Medical Criteria for Determinations of Disability, 67 FR 20018-01 (April 24, 2002), by identifying and applying one of the four standards of measurement used by one of the professional organizations in making his determination.   See Grunden v. Astrue, 2011 WL 4565502 (W.D. Pa., Sept. 29, 2011); Logan v. Astrue, 2008 WL 4279820 at *8 (W.D. Pa. Sept. 16, 2008)(D.J. Fischer).   However, remand is not necessary on this ground because the ALJ's finding that plaintiff did not meet the first prong of the 12.05(C) criteria by showing a valid IQ score of 60 through 70 is supported by substantial evidence.

unskilled work, he cannot work at a production rate and he requires work consistent with a marginal education.  (R. 17). Although plaintiff disputes this finding, it is clear from the record that the ALJ adequately considered all of the relevant medical evidence, as well as plaintiff's reported activities, in assessing plaintiff's residual functional capacity, and that he incorporated into his finding all of the limitations that reasonably could be supported by the medical and other relevant evidence.  (R. 17-21).  The court is satisfied that the ALJ's residual functional capacity finding is supported by substantial evidence as outlined in the decision.

To the extent plaintiff argues that the ALJ failed to consider the combined effects of all of plaintiff's medical conditions, in assessing plaintiff's residual functional capacity, or at any other point in the sequential evaluation process, the record also fails to support that position.  The ALJ specifically noted in his decision that he considered all of plaintiff's impairments in combination at steps 3 and 5 and his findings demonstrate that he did just that.  The ALJ's residual functional capacity finding accommodates both plaintiff's physical limitations, by restricting him to only occasional postural activities, and his mental limitations, by limiting him to simple and unskilled work which does not require production rates and which is consistent with a marginal education, (R. 17), and these limitations are consistent with the medical evidence, as discussed in the ALJ's decision.

Upon review of the ALJ's decision and the record as a whole, the court is satisfied that the ALJ took into consideration all of the medically supportable limitations arising from all of plaintiff's impairments, both severe and not severe, in combination in assessing plaintiff's residual functional capacity, as well as at every step in the sequential evaluation process.

Finally, although plaintiff argues that the ALJ failed to properly consider plaintiff's testimony in assessing his residual functional capacity, the court is satisfied that the ALJ properly evaluated plaintiff's subjective complaints as to his limitations in accordance with the regulations. 20 C.F.R. §§404.1529(c) and 416.929(c); see also SSR 96-7p.[9]   In assessing plaintiff's credibility, the ALJ considered plaintiff's subjective complaints, but also considered those complaints in light of the medical evidence, plaintiff's treatment history and all of the other evidence of record, and concluded that plaintiff's subjective complaints of pain and limitations were inconsistent with the totality of the evidence. (R. 19-20).

The ALJ did a thorough job explaining why plaintiff's allegations of disabling symptoms are not supported by the record, and, in particular the objective medical findings. (R. 19-20). Based upon that evidence, the ALJ found plaintiff to be not

---

[9]   Allegations of pain and other subjective symptoms must be supported by objective medical evidence, 20 C.F.R. §§404.1529(c) and 416.929(c), and an ALJ may reject a claimant's subjective testimony if he does not find it credible so long as he explains why he is rejecting the testimony. Schaudeck v. Commissioner of Social Security, 181 F.3d 429, 433 (3d Cir. 1999); see also SSR 96-7p.

entirely credible. The ALJ adhered to the appropriate standards in evaluating plaintiff's credibility and it is not this court's function to re-weigh the evidence and arrive at its own credibility determination. Rather, this court must only determine whether the ALJ's credibility determination is supported by substantial evidence. The court is satisfied that it is.

It also is important to note that while the ALJ did not find plaintiff's subjective complaints <u>entirely</u> credible, his decision makes clear that, to the extent plaintiff's allegations as to the limitations arising from his impairment are supported by the medical and other evidence, the ALJ accommodated those limitations in his residual functional capacity finding. (R. 19). Only to the extent that plaintiff's allegations are not so supported did the ALJ find them to be not credible.

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

Gustave Diamond
United States District Judge

cc:  J. Kirk Kling, Esq.
     630 Pleasant Valley Boulevard
     Suite B
     Altoona, PA 16602

     Stephanie L. Haines
     Assistant U.S. Attorney
     200 Penn Traffic Building
     319 Washington Street
     Room 224, Penn Traffic Building
     Johnstown, PA 15901